STATE OF NORTH CAROLINA v. EARNEST RAY THOMAS

No. 748SC342

(Filed 3 July 1974)

1. **Automobiles § 113— involuntary manslaughter — sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for involuntary manslaughter growing out of an automobile collision.

2. **Automobiles § 46— opinion testimony as to speed**

    In this prosecution for involuntary manslaughter, the trial court did not err in allowing several witnesses to testify as to the speed of defendant's vehicle prior to the accident where the record shows that each such witness had ample opportunity for observation of defendant's automobile.

3. **Criminal Law § 75— investigation of accident — interrogation in hospital emergency room — absence of Miranda warnings**

    Defendant was not subjected to "custodial interrogation" and was thus not entitled to be given the *Miranda* warnings when highway patrolmen investigating an automobile collision questioned defendant in a hospital emergency room for the purpose of obtaining information to fill out an accident report, and defendant's statement during such interrogation that he was driving a car involved in the collision was properly admitted in his trial for involuntary manslaughter although he had not been given the *Miranda* warnings.

4. **Criminal Law § 144— amendment of judgments by clerk of court— absence of authority**

    The clerk of superior court had no authority to amend judgments imposed in criminal cases notwithstanding the trial court entered an order "that the judgments be amended in accordance with the remembrance of the Court Clerk."

5. **Criminal Law § 138— more severe sentence upon retrial**

    Where defendant was awarded a new trial upon appeal of convictions for three offenses of involuntary manslaughter, the trial court at defendant's second trial erred in imposing sentences which in the aggregate are more severe than the sentences imposed at the first trial without giving sufficient reasons therefor.

APPEAL by defendant from *James, Judge,* 8 October 1973 Session of Superior Court held in GREENE County.

This is a criminal action wherein the defendant, Earnest Ray Thomas, was charged in three separate bills of indictments, proper in form, with involuntary manslaughter arising out of an automobile accident on 5 February 1971. Upon arraignment, the defendant entered a plea of not guilty as to all charges; and

State v. Thomas

the State offered evidence which tended to establish the following:

On 5 February 1971, at about 6:25 p.m., the defendant was operating an automobile on highway 264 in Greene County and was traveling in an easterly direction. According to the testimony of several persons, the defendant was operating his vehicle at speeds greater than seventy miles per hour and was pulling in and out of traffic. As defendant pulled out into the left lane to pass a vehicle in front of him, he crashed head-on into an automobile traveling west on highway 264. The parties stipulated that as a result of this accident, Linda Arrington and Ann Tort, both of whom were riding in the car headed in a westerly direction, and Jeffrey Fogel, who was riding with the defendant, were killed. The posted speed limit at the scene of the accident was 50 miles per hour for trucks and 60 miles per hour for cars. After the collision, the defendant, who remained pinned in his automobile under the steering wheel for some length of time, was detected to have an odor of alcohol on his breath; but the evidence introduced by the State did not reveal that he was under the influence of intoxicating liquor.

Defendant offered evidence which, in substance, tended to show that at the time of the accident the vehicle was being driven, not by defendant, but by Jeffrey Fogel, and that defendant was riding on the right side of the front seat.

From verdicts of guilty as to all three counts of involuntary manslaughter and judgments imposed thereon, the defendant appealed.

*Attorney General Robert Morgan by Associate Attorney Robert R. Reilly for the State.*

*Turner and Harrison by Fred W. Harrison for defendant appellant.*

HEDRICK, Judge.

[1]   The defendant contends that the trial court erred in failing to grant his motion for judgment as of nonsuit. Defendant raised this same question in a former appeal of this case reported in 17 N.C. App. at page 8, and at that time the court held that there was sufficient evidence to require submission of the case to the jury. The evidence presented at the second trial being

substantially the same as that presented at the first trial, we adhere to the previous determination of the question.

[2]   Defendant also contends that the trial court committed error when it allowed several witnesses to testify as to the speed of defendant's vehicle prior to the tragic accident.

> "The general rule is that 'any person of ordinary intelligence, who has had an opportunity for observation, is competent to testify as to the rate of speed' of a motor vehicle. But the opportunity to observe must have been one which the Court considers adequate, and where the only basis for the opinion of the witness was a momentary glimpse under unfavorable conditions, his testimony should be excluded." Stansbury's North Carolina Evidence (Brandis Rev.), Vol. 1, § 131, pp. 420-1.

The record discloses that each of the witnesses who testified as to the speed of defendant's vehicle had ample opportunity for observation and, thus, were competent to testify as to the rate of speed.

[3]   Next, defendant asserts that the trial court erred in failing to suppress statements made by the defendant to the investigating officers prior to being given the *Miranda* warnings. The statements were made in response to a series of questions asked by two highway patrolmen of defendant, while the latter was being treated for injuries in the Wilson County Memorial Hospital Emergency Room. During the course of the questioning, the defendant admitted being the driver of the car; however, he later repudiated this incriminating statement and now claims that another passenger in the car was driving at the time of the accident.

Defendant, relying upon *Howard v. State*, 44 Ala. App. 595, 217 So. 2d 548 (1969) and *Vandergriff v. State*, 219 Tenn. 302, 409 S.W. 2d 370 (1966), submits that the interrogation in the emergency room was a custodial interrogation and that the defendant should have been apprised of his fifth and sixth amendment rights as vouchsafed by *Miranda v. Arizona*, 384 U.S. 436 (1966). Conversely, the State maintains that the questions asked by the patrolmen were posed in the investigatory stage (not custody stage) and "that *Miranda* operates in all its full glory only when the accused is in fact in some sort of police custody." *State v. Brunner*, 211 Kan. 596, 507 P. 2d 233

State v. Thomas

(1973). In order to resolve this question, it is necessary to depict the circumstances surrounding the interrogation. The findings of fact made by the trial judge at the conclusion of the *voir dire* (held to determine the admissibility of defendant's statements) detail the events of the questioning as follows:

"That on the 5th day of February, 1971, Trooper J. P. Whitehurst was called upon to investigate this accident occurring on Highway 264, Greene County; that he made an initial collision-scene investigation; that at that time he gathered such information about the accident as was available; that during this on-the-scene investigation, he did not talk to any eyewitness to the accident; that on the collision date, Trooper Whitehurst didn't talk to anyone who could tell him how and why the accident occurred; that Sergeant Louis Taylor arrived at the scene of the accident at about 7:00 o'clock p.m. to assist Trooper Whitehurst; that Taylor stayed at the wreck scene approximately one hour, working traffic; that Taylor likewise didn't talk to anyone who could tell him how and why the accident occurred; that indeed the Sergeant didn't talk with any witnesses at the scene; that at approximately 8:30 p.m., Trooper Whitehurst and Sergeant Taylor together went to the Wilson Memorial Hospital; THAT THESE OFFICERS WENT THERE FOR THE SPECIFIC PURPOSE OF TALKING TO THE WRECK VICTIMS TO SEE IF THEY COULD DETERMINE THE DRIVERS OF THE RESPECTIVE VEHICLES INVOLVED AND TO SECURE THE NECESSARY INFORMATION FOR AN ACCIDENT REPORT; THAT THE CAUSE OF THE ACCIDENT WAS UNKNOWN TO THESE OFFICERS AT THIS TIME; that the officers proceeded directly to the emergency room where the wreck victims were located; that the Wilson County Memorial Hospital Emergency Room is a room approximately 30 feet by 30 feet; that at this time there were approximately 15 persons in the emergency room exclusive of Whitehurst and Taylor; that these 15 people were nurses, doctors, patients, and wreck victims; that in addition to those persons there were only two law enforcement officers present—i.e., Whitehurst and Taylor; THAT THESE OFFICERS HAD PLANNED TO TALK WITH ALL THE WRECK VICTIMS, but after talking with the doctors, they talked only with the McMillian girl and the defendant; * * * THAT AT THE TIME THOMAS WAS FIRST TALKED TO, THESE OFFICERS HAD NO KNOWLEDGE AS TO THE ACCIDENT'S CAUSE, AND WERE STILL IN

THE PROCESS OF FILLING OUT THE ACCIDENT REPORT; THAT AT THE TIME THE OFFICERS TALKED WITH THE DEFENDANT, HE WAS NOT BEING TREATED FOR HIS INJURIES, although he had been severely injured; that he was not warned of his Miranda rights by either officer; THAT HE WAS TOLD BY SERGEANT TAYLOR THAT THE OFFICERS WERE SEEKING TO SECURE INFORMATION TO ENABLE THEM TO FILL OUT AN ACCIDENT REPORT, AND TO NOTIFY NEXT OF KIN, ETC.; THAT THESE WERE TRUE AND ACCURATE STATEMENTS OF FACT ON BEHALF OF THESE OFFICERS; * * *

* * * THAT AT THIS TIME THE DEFENDANT WAS FREE TO GO AT HIS PLEASURE SO FAR AS THE OFFICERS WERE CONCERNED; THAT THESE OFFICERS HAD NO INTENTIONS OF ARRESTING THE DEFENDANT FOR ANY CRIME; THAT THE DEFENDANT KNEW HE WAS IN THE EMERGENCY ROOM OF A HOSPITAL; THAT THE DEFENDANT WAS COHERENT IN THOUGHT AND SPEECH; THAT HE WAS NOT NOTICEABLY SEDATED OR UNDER THE INFLUENCE OF ANY ALCOHOL OR NARCOTIC DRUGS, ALTHOUGH AN ODOR OF ALCOHOL WAS DETECTABLE ON HIS PERSON; THAT THE DEFENDANT KNEW WHAT WAS GOING ON AROUND HIM; THAT HE KNEW HE WAS TALKING TO LAW ENFORCEMENT OFFICERS; THAT THE DEFENDANT DIDN'T SEEM TO BE IN SEVERE PAIN; THAT HE COMPREHENDED WHAT SERGEANT TAYLOR TOLD HIM; THAT AT THIS TIME THE DEFENDANT TALKED INTELLIGENTLY; THAT HE WAS IN THE POSSESSION OF HIS MENTAL AND PHYSICAL FACULTIES ALTHOUGH HE WAS INJURED; THAT THE DEFENDANT'S FREEDOM OF ACTION AT THIS TIME WAS NOT RESTRICTED BY LAW ENFORCEMENT PERSONNEL IN ANY SIGNIFICANT WAY OR IN ANY WAY; that Sergeant Taylor asked the defendant what happened, and the defendant replied he didn't know; that up to that moment, Sergeant Taylor and Trooper Whitehurst had been unable to determine why the accident had occurred; THAT SERGEANT TAYLOR THEN ASKED HIM WHO WAS DRIVING THE OLDSMOBILE AT THE TIME OF THE ACCIDENT, AND THE DEFENDANT SAID HE WAS; THAT ADDITIONALLY THE DEFENDANT SAID FOGEL WAS SEATED IN THE MIDDLE AND JIMMY THOMAS IN THE RIGHT FRONT PASSENGER'S SEAT; * * *

* * * THAT AFTER TALKING WITH THE DEFENDANT, THE OFFICERS DIDN'T IMPEDE THE DEFENDANT'S FREEDOM OF ACTION IN ANY WAY, NOR DID THEY GIVE ANY ORDER

State v. Thomas

TO ANYONE THAT THE DEFENDANT WAS NOT FREE TO RE-
MOVE HIMSELF FROM THE HOSPITAL AT HIS PLEASURE;
THAT THE DEFENDANT AT THIS TIME WAS FREE TO DO AS
HE WISHED OR TO COMMAND OTHERS TO DO FOR HIM; * * *"

We are of the opinion, as was the trial judge, that these
facts do not constitute "custodial interrogation" since the atmos-
phere and physical surroundings during the questioning mani-
fest a lack of restraint or compulsion. This conclusion finds
support in the decisions of other jurisdictions which have been
confronted with this same question. *State v. Sandoval,* 92 Idaho
853, 452 P. 2d 350 (1969); *People v. Gilbert,* 8 Mich. App. 393,
154 N.W. 2d 800 (1967); *People v. Phinney,* 22 N.Y. 2d 288,
292 N.Y.S. 2d 632, 239 N.E. 2d 515 (1968); *State v. Zucconi,*
50 N.J. 361, 235 A. 2d 193 (1967); *State v. Lopez,* 79 N.M.
282, 442 P. 2d 594 (1968). See also, *United States v. Mackiewicz,*
401 F. 2d 219 (2nd Cir. 1968), cert. denied 393 U.S. 923
(1968). Moreover, the United States Supreme Court in *Miranda,*
*supra,* at p. 477, stated, "Our decision is not intended to hamper
the traditional function of police officers in investigating crime."

Furthermore, we are not persuaded by the cases which
defendant has cited as support for his argument. In *Howard v.
State, supra,* the Alabama Court determined that a hospitalized
suspect was in custody because the defendant *had been taken
there by the police* (emphasis added), and the court further
emphasized that he was not free to leave without the likelihood
of police intervention. These circumstances are clearly different
from those present in the instant case. As to the other case re-
lied upon by defendant, *Vandergriff v. State, supra,* a Tennes-
see Court found "custodial interrogation" from the "mere fact
that the hospitalized person was suspected of being the driver
of the death car; his freedom of activity or restraints thereof
were not deemed relevant." We admit that *Vandergriff* is more
difficult to distinguish than *Howard;* however, we agree with
the following criticism of *Vandergriff* contained in *State v.
Brunner, supra,* at p. 237.

"If we read *Miranda* correctly, and especially the text and
note quoted above, this is a wholly unwarranted extension
of the 'focusing' language of *Escobedo.* We think *Miranda*
clearly says that there must be some police-instigated re-
straint before a suspect can be regarded as being in the
custody of the officers."

Thus, the defendant was not entitled to be given the *Miranda* warnings; and, therefore, this assignment of error is overruled.

Defendant contends that the trial court erred in sentencing him upon retrial to terms greater than he received at the first trial. Perhaps a proper understanding of our disposition of this question can best be obtained by a brief review of some of the history of this case. Defendant was tried, convicted, and sentenced for three counts of involuntary manslaughter on 5 February 1971. The case was appealed to this court and in *State v. Thomas*, 17 N.C. App. 8, 193 S.E. 2d 450 (1972), defendant was granted a new trial (for reasons not pertinent in this appeal). In the prior record on appeal (No. 728SC665) the judgment on each count appears as follows:

"JUDGMENT AND APPEAL ENTRIES

*Judgment of Court: 71CR238*

It is adjudged that the defendant be imprisoned in the State's Prison for the term of two years. This sentence to run at the expiration of sentence in 71CR339.

*Judgment of Court: 71CR338*

It is adjudged that the defendant be imprisoned in the State's Prison for the term of two years. This sentence to run at the expiration of 71CR238.

*Judgment of Court: 71CR339*

It is adjudged that the defendant be imprisoned in the State's Prison for a term of two years. This sentence to run at the expiration of 71CR338."

Prior to the disposition of the first appeal of this case by this Court, the State filed a Motion Suggesting Diminution of the Record because the trial court (Cowper, Judge) had signed an order directing "that the judgments be amended in accordance with remembrance of the Court Clerk . . . . " The defendant filed an answer opposing the motion, but this Court allowed the motion and ordered that the order, the motion, the answer, and the certified copies of judgments and commitments be reproduced as an addendum to the record. The addendum to the record indicates that the judgments were amended *by the Clerk* pursuant to Judge Cowper's order to provide that defendant be

State v. Thomas

imprisoned for a period of two years on each count, said sentences to run consecutively.

After defendant's conviction at the second trial, the trial judge entered judgments as follows: In 71CR338, prison sentence of not less than three nor more than four years; in 71CR339, prison sentence of not less than three nor more than four years, to begin at completion of sentence in 71CR338; and in 71CR238, prison sentence of not less than two nor more than three years to run concurrent with sentence imposed in 71CR339.

While we find no error in the second trial, the judgments entered at the second trial and appealed from are vacated and this cause is remanded to the superior court with the following directions:

[4]  (1)  After notice to defendant, his counsel and the solicitor, the court will conduct a hearing and make a determination as to the judgments the trial judge intended to enter at the first trial. Notwithstanding Judge Cowper's order, the Clerk of the Superior Court of Greene County was without authority to amend the prior judgments. The court will then correct the record to speak the truth with respect to the prior judgments.

[5]  (2)  Following said determination and correction, the court will enter new judgments against defendant, which judgments, in the aggregate, will not be more severe than the judgments which the court determines were intended to be entered at the first trial. It is clear that the judge at the first trial did not intend to impose sentences exceeding six years; the judgments entered at the second trial were more severe and the reasons given by the judge at that trial do not satisfy the requirements set forth in *North Carolina v. Pearce*, 395 U.S. 711 (1969).

In summary, we find no error in defendant's second trial; but, for the reasons stated, the judgments entered thereat are vacated and the cause is remanded for appropriate judgments consistent with this opinion.

Remanded.

Judges BRITT and CARSON concur.