STATE OF NORTH CAROLINA v. KENNETH MORRISON

No. 8614SC1067

(Filed 5 May 1987)

1. **Rape and Allied Offenses § 4.1— defendant's attempt to rape witness—admissibility of testimony to show common plan or scheme**

   The trial court in a rape case did not err in allowing a witness to testify that defendant had attempted to rape her when the witness's account was similar to that of the victim in this case, and the witness's testimony was therefore properly admissible to show that the prior crime involved a common plan or scheme.

2. **Rape and Allied Offenses § 4; Criminal Law § 78— stipulation as to penetration—admissibility**

   There was no merit to defendant's contention that the trial court erred in admitting into evidence a stipulation signed by the defense attorney and the prosecutor establishing an essential element of second degree rape—that is, the act of sexual intercourse or penetration—without any showing that defendant himself had personally stipulated to this essential element of the charged crime, since the attorney was presumed to have the authority to act on behalf of his client and the record was free of any indication to the contrary.

3. **Rape and Allied Offenses § 5— second degree rape—sufficiency of evidence of force**

   There was sufficient evidence of the element of force to convict defendant of second degree rape where it tended to show that defendant locked his bedroom door and pushed the victim toward the bed; the victim stated that she was afraid defendant would hurt her and that she began to cry; and when the victim tried to stop defendant from undressing her, he pushed her hands aside and told her that her crying "was going to make it worse."

APPEAL by defendant from *Lee, Judge.* Judgment entered 16 May 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 4 March 1987.

Defendant was charged in a proper bill of indictment with rape in violation of G.S. 14-27.2(a)(2) and G.S. 14-27.3(a)(1).

The State's evidence tended to show the following: The victim, whose name is not necessary to this opinion, testified that on 28 May 1985, defendant offered her a ride home from the North Carolina Central University campus. Although she did not know defendant, she accepted the ride. Defendant drove the victim to her apartment and they arranged to go to a park later that day. Defendant told the victim that his name was Gary.

Approximately an hour later, defendant returned to the victim's apartment. They both waited in the apartment for approximately 15 minutes until the victim's brother arrived. During that time, the victim changed her clothes. Defendant and the victim left for the park in defendant's car. On the way to the park, defendant told the victim that he needed to stop by his apartment to change clothes. Defendant warned the victim that his apartment had little furniture. They entered the sparsely furnished apartment, and defendant told the victim that she could watch television in his bedroom. The victim made several phone calls and then sat down on the bed to watch television.

Defendant sat down next to her and tried to kiss her. She told him "no," but he moved closer and tried again. She put her knees up to keep him from leaning on her and told defendant that she was ready to go home. Defendant told her that she had plenty of time. The victim repeated her request to go home, and defendant got up and locked the bedroom door. The victim got up and headed for the door but defendant pushed her toward the bed and yelled at her to sit down. The victim testified that defendant was "losing it" and that she believed the defendant was going to hurt her.

Defendant then began to undress the victim and she began to cry. When she tried to stop defendant with her hands, he pushed her hands aside and told her that if she cried, "it was going to make it worse." The victim testified that she stopped resisting because she had "read too many cases of people resisting or fighting back an attacker or getting beat up or getting killed, and that was the first thing in [her] mind, [her] mom would have to bury [her] because of somebody." Defendant then had intercourse with the victim.

Although defendant wanted to have intercourse a second time, he let the victim get up and get dressed. Defendant then drove the victim back to her apartment and apologized several times. Upon arriving back at her apartment, the victim told a neighbor what had happened and reported the matter to the Durham Police Department.

Defendant was convicted of second degree rape and was sentenced to a 12-year term of imprisonment. From the judgment of the trial court, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy At-*
*torney General Daniel F. McLawhorn, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for defendant appel-*
*lant.*

ARNOLD, Judge.

[1]   Defendant first contends that the trial court erred in allow-
ing a witness (whose name need not be mentioned) to testify that
defendant had attempted to rape her.

The witness testified that she met defendant through a
mutual friend when she agreed to let defendant borrow her type-
writer. Defendant took the witness for "fast-food" to repay her
for the use of her typewriter. At that time, defendant tried to get
the witness to go home with him but she declined and exited the
car abruptly. Defendant called her ten minutes later to apologize
for his behavior.

Defendant called the witness repeatedly to ask her to dinner.
On 28 April 1985, she finally agreed. When defendant arrived to
take the witness to dinner, he was dressed in sweat clothes. He
told her that he had helped a friend fix a car and needed to stop
by his apartment to change clothes. The witness went into de-
fendant's apartment with him and as she was looking for a light
switch, defendant locked the door. Just as the witness found a
light, defendant pushed her into the bedroom and blocked the en-
trance so she couldn't get out. Defendant pushed her back onto
the bed and "started getting rough." He rubbed his body against
her, and she resisted. In the ensuing struggle, defendant attempt-
ed to take her clothes off and choked her to stop her from scream-
ing. Defendant attempted to have intercourse with the witness
but she continued to resist and hit him with a hammer. She then
escaped and fled his apartment partially disrobed.

Defendant argues that the witness's testimony was not prop-
erly admissible. We do not agree.

G.S. 8C-1, Rule 404(b) permits evidence that a defendant com-
mitted similar offenses "when it tends to establish a common plan
or scheme embracing the commission of a series of crimes so re-
lated to each other that proof of one or more tends to prove the
crime charged and to connect the accused with its commission."

*State v. DeLeonardo*, 315 N.C. 762, 770, 340 S.E. 2d 350, 356 (1986). In *State v. Gordon*, 316 N.C. 497, 504, 342 S.E. 2d 509, 513 (1986), our Supreme Court stated:

> This Court has been quite "liberal in admitting evidence of similar sex crimes" under the common plan or scheme exception. *State v. Effler*, 309 N.C. 742, 748, 309 S.E. 2d 203, 207 (1983). This position has included allowing the admission of evidence showing sexual assaults by the defendant against people other than the victim in the crime for which he is on trial.

The witness's testimony was properly admissible to show that the prior crime involved a common plan or scheme to the present offense charged. In both the present case and the case involving the witness, defendant lured the women into his apartment on the pretext that he needed to change clothes before their dates. Once inside, defendant's pattern of behavior was nearly identical. His demeanor changed and he became threatening. The witness testified, "[h]e was looking different. He had a very wild and very hateful look in his eye that frightened me." The victim testified that defendant was "losing it" and that she thought he would hurt her because of "the way he looked and the tone of his voice." Defendant then pushed the women toward the bed, disrobed them and attempted intercourse. Therefore, the testimony was properly admitted under Rule 404(b).

Defendant also argues that the admission of the testimony was unfairly prejudicial and violated Rule 403 of the Rules of Evidence. We disagree.

Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). Defendant has failed to show that the trial judge abused his discretion. Thus, we hold that the testimony was properly admitted.

[2] Defendant next contends that "the trial court erred in admitting into evidence a stipulation signed by the defense attorney and the prosecutor establishing an essential element of second degree rape—that is, the act of sexual intercourse or penetration—without any showing on the record that the defendant himself had personally stipulated to this essential element of the charged

crime, and without anything in the record showing that defendant knowingly, voluntarily, and understandingly consented to such a stipulation being entered and read to the jury." We do not agree.

In *State v. Watson,* 303 N.C. 533, 279 S.E. 2d 580 (1981), defense counsel entered a stipulation regarding an element of the offense with which his client was charged. On appeal, defendant alleged error by its admission since he had not signed it and there was nothing in the record to indicate that he knowingly and intelligently consented to it. The Court found his contention meritless and stated:

> It is well-established that stipulations are acceptable and desirable substitutes for proving a particular act. Statements of an attorney are admissible against his client provided that they have been within the scope of his authority and that the relationship of attorney and client existed at the time. In conducting an individual's defense an attorney is presumed to have the authority to act on behalf of his client. The burden is upon the client to prove lack of authority to the satisfaction of the court. (Citations omitted.)

*Id.* at 538, 279 S.E. 2d at 583.

In *Watson,* the record was free of any indication that defense counsel was acting contrary to the wishes of his client. The same is true of the present case. Therefore, we hold that the trial court properly admitted the stipulation.

[3] Defendant also contends that there was insufficient evidence of the element of force to convict him of second degree rape. We do not agree.

Second degree rape is vaginal intercourse by force and against the will of the victim. G.S. 14-27.3(a)(1). *State v. Barnette,* 304 N.C. 447, 284 S.E. 2d 298 (1981). In the present case, the victim testified that defendant locked the bedroom door and pushed her towards the bed. She stated that defendant was "losing it" and yelled at her to sit down. She also stated that she was afraid defendant would hurt her and that she began to cry. When she tried to stop defendant from undressing her, he pushed her hands aside and told her that her crying "was going to make it worse."

The force required to constitute rape must be actual or constructive force used to achieve the sexual intercourse. Either is

sufficient. *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984). In the case *sub judice*, there is evidence of both actual and constructive force. The actual force occurred when defendant pushed the victim towards the bed and when he pushed her hands aside. Constructive force occurred when defendant locked the door, yelled at the victim and placed her in fear that she would be hurt. *See id.*

Therefore, we hold that there was ample evidence of the element of force to withstand defendant's motion to dismiss.

We have reviewed defendant's remaining assignment of error and find it to be without merit.

No error.

Judges PHILLIPS and GREENE concur.