STATE OF NORTH CAROLINA v. HARRY LEE FULLER

No. COA03-1555

(Filed 19 October 2004)

### 1. Rape— second-degree—eleven-year-old victim—testimony sufficient

There was no error in the denial of a motion to dismiss a second-degree rape prosecution where the eleven-year-old victim testified that defendant had put his "private" inside her "private" four to eight times.

### 2. Rape— first-degree statutory—evidence sufficient

There was no error in denying a motion to dismiss a first-degree statutory rape prosecution where there was evidence that defendant was more than four years older than the eleven-year-old victim and the child testified to penetration.

### 3. Appeal and Error— constitutional claim—not raised at trial

A claim of double jeopardy in a prosecution for first-degree statutory rape and second-degree forcible rape was not considered on appeal because it was not raised at trial.

### 4. Sexual Offenses— with child—evidence sufficient

The denial of a motion to dismiss a prosecution for first-degree sexual offense with a child was not error where the child testified that defendant forced fellatio.

### 5. Indecent Liberties— child's testimony—sufficient

The trial court did not err by denying a defendant's motion to dismiss an indecent liberties prosecution where the child's testimony was sufficient for the jury to infer that defendant acted to arouse or gratify sexual desire.

### 6. Confessions and Incriminating Statements— statements by defendant—no Miranda warning—not yet arrested

Statements made by defendant to a deputy while receiving treatment for an unrelated injury at a hospital were properly admitted in a prosecution for first-degree statutory rape and other offenses. The deputy did not inform defendant of his Miranda rights, but did tell him that he was not under arrest, was free to leave, and did not have to speak with him, and defendant was not in fact arrested until days later. Defendant had not been

indicted, an arrest warranted had not been issued, and *Fellers v. United States*, 540 U.S. —— (2004) is not controlling.

**7. Evidence— letters from jail—no reasonable expectation of privacy**

Letters defendant wrote to his wife from jail were properly admitted in a prosecution for first-degree statutory rape and other offenses. The letters were not marked "legal" or addressed to an attorney and were given to jail personnel to mail. There was no reasonable expectation of privacy.

**8. Evidence— marital privilege—letters from jail**

Letters sent by an incarcerated defendant to his wife that were seized by law enforcement officers were admissible despite defendant's claim of marital privilege. A third person who overhears a conversation between husband and wife may be examined as to that conversation, and confidential letters from husband to wife are admissible against the husband when brought into court by a third party.

**9. Appeal and Error— assignments of error—authority not presented—testimony not specifically identified—review waived**

Defendant waived appellate review of whether certain of his statements to a deputy should have been admitted by not presenting authority to support his assignment of error and by not specifically identifying those portions of testimony at issue. Moreover, defendant's statements were corroborated by other evidence.

**10. Witnesses— expert—sexual assault nurse examiner**

The trial court did not abuse its discretion in a prosecution for statutory rape and other offenses by allowing a nurse to testify as an expert sexual assault nurse examiner where she had been employed by the hospital for nineteen years; had served as a nurse manager in the emergency department for two years; had a bachelor of science in nursing and had received special sexual assault nurse examiner training in 1999; that training involved forty hours in the classroom and fifty-six hours of clinical practice; the witness was specifically trained to examine the victim's demeanor and body language as well as to look for physical evidence and signs of trauma; and the witness had been a certified sexual assault nurse examiner for three years at the time of trial.

**11. Evidence— sexual offenses—medical testimony—injuries consistent with assault**

The trial court did not err in a prosecution for statutory rape and other offenses by permitting a doctor and a nurse who were qualified as experts to testify about whether their examinations and findings were consistent with a child who had suffered kissing on the breast and vaginal penetration.

**12. Sexual Offenses— first-degree statutory sexual offense— instruction on attempt denied—evidence not sufficient**

The trial court did not err in a prosecution for first-degree statutory sexual offense by not giving an instruction on the lesser-included offense of attempted first-degree sexual offense. Although defendant testified that he attempted vaginal intercourse (but failed due to a back spasm), no evidence was presented that defendant attempted to engage in the sexual acts required for first-degree sexual offense.

Appeal by defendant from judgments entered 22 August 2003 by Judge Clarence E. Horton, Jr., in Stanly County Superior Court. Heard in the Court of Appeals 15 September 2004.

*Attorney General Roy Cooper, by Assistant Attorney General R. Kirk Randleman, for the State.*

*Carlton, Rhodes & Carlton, by Gary C. Rhodes, for defendant-appellant.*

TYSON, Judge.

Harry Lee Fuller ("defendant") appeals from judgments entered after a jury found him to be guilty of second-degree forcible rape, first-degree statutory rape, first-degree statutory sexual offense, and three counts of indecent liberties with a minor. We find no error.

## I. Background

The State's evidence tended to show that on 30 June 2002, eleven-year-old P.E. ("the child") was visiting with B.F., defendant's daughter. Around 8:00 or 9:00 p.m., defendant, B.F., and the child were riding in defendant's car. Defendant asked B.F. to take the steering wheel, and he turned towards the child in the back seat and kissed her on the mouth. The child testified she felt defendant's tongue in her mouth. B.F. corroborated this portion of the child's testimony.

STATE v. FULLER

[166 N.C. App. 548 (2004)]

The three continued to ride around for about an hour and stopped by Sonic Drive-In for a milkshake before returning to defendant's home. After returning to defendant's residence, B.F. and defendant sat on couches and watched television. The child went to B.F.'s room and laid down.

About ten minutes later, defendant entered the bedroom, lifted the child's shirt, removed her panties, and began kissing her chest. While on top of her, defendant inserted his penis into her vagina "four to eight" times. Defendant also asked the child to perform oral sex on him. After the child performed oral sex, defendant inserted his finger into the child's vagina for "not even five minutes." Defendant also kissed the child on her "private" with his mouth.

Defendant left the room and returned with a washcloth. He used the washcloth to "wipe[] something off the bed." The child did not go to sleep that night and left around 6:00 or 7:00 a.m. the next morning. She took the church bus to Sunday school and told her friend, M.E., what had happened at defendant's house. M.E. testified and corroborated the child's testimony.

When the child returned home after church, she told her mother what had happened at defendant's house. The child's mother immediately transported the child to the hospital, where she was examined. Both Dr. Ann Alexander ("Dr. Alexander"), an Emergency Room Physician, and Gina Smith ("Nurse Smith"), a sexual assault nurse examiner, testified as expert witnesses that abrasions noted on the child's genitalia were consistent with vaginal penetration and that the redness noted on her breast was consistent with having been kissed on the breast.

Stanly County Sheriff's Deputy James Inman ("Deputy Inman") responded to the hospital where the child was being examined. He testified that he spoke with the child's mother regarding the accusations and identified defendant as a suspect. Deputy Inman did not question the child. Deputy Inman also became aware that defendant was present at the hospital for unrelated treatment for pain from an injury he obtained while riding a horse. Deputy Inman spoke with defendant, informed him that he was not under arrest, and told him that if defendant wanted him to leave, no further questions would be asked. Defendant told Deputy Inman that the child had rubbed his back and neck in a suggestive way while in the car. Upon returning home, he fell asleep on the sofa with his daughter and sometime during the night, he went to the bedroom to check on the

child. While at the hospital, defendant agreed to submit to a "suspect kit" for DNA testing.

Stanly County Sheriff's Detective Sergeant Clyde Coley ("Detective Coley") testified that he spoke with the child and her mother at their residence on 1 July 2002. Detective Coley testified to the child's accusations, which were consistent with her testimony. On 2 July 2002, warrants were issued for defendant, who was arrested and placed in Stanly County Jail. On 5 July 2002, Stanly County Sheriff's Deputy Marcus Clack ("Deputy Clack") was transporting defendant to the "change-out room" in the Stanly County Jail, where defendant was placed on suicide watch and given a "suicide robe."

In the "change-out room," defendant began to cry and stated he had smoked marijuana and taken Percocet during the day and in the evening when the incident occurred. Defendant also stated the child had approached him while he was on the couch. Defendant stated he was "partially out of it" and began to interact with the child. Defendant could not remember whether penetration occurred and stated he was confused of whom he was touching. Once he realized it was the child, "he pushed her away and said something to the effect that she'd better get out of here or leave before they both got in trouble." After making these statements, defendant requested to speak with Detective Coley.

Deputy Clack telephoned Detective Coley and informed him that defendant wanted to speak to him. Detective Coley told Deputy Clack that defendant had appointed counsel and defendant would need to provide written notification that he wanted to speak with Detective Coley. Deputy Clack called again a short time later and informed Detective Coley that defendant had prepared and signed a written statement, which stated, "I, Harry Fuller, waive right to legal counsel and can talk to Detective Coley."

Detective Coley went to the jail, informed defendant he had an attorney appointed, and that he was making a request to discuss these matters without the presence of his attorney. Defendant responded that he still wanted to talk with Detective Coley, signed a statement acknowledging the waiver of his rights, and stated he had some things he wanted to "get off his chest." Detective Coley noted these comments on a piece of paper where he later wrote defendant's statement and also noted the comments on the bottom portion of the *Miranda* rights form. After advising defendant he was represented by counsel and understood that he was

waiving that right, Detective Coley read defendant his *Miranda* rights and recorded his statement.

Defendant testified at trial. He stated, "I was up against the steering wheel trying to look at my daughter to speak to her. And it was as dump [sic] a thing to do, I see now. At the time I thought, well, I just—she repeated, but she did not—she reacted to it . . . [by] purs[ing] her lips and kissed." He testified he was asleep on the couch and awoke to find the child "setting [sic] on the corner of the couch barely perched and she was playing with my penis . . . ." He pushed her to the floor and told her to "get out of here . . . if my wife would have walked in on it, would have looked bad on both of us." He "passed right back out" due to the amount of Percocet in his system and slept until around 8:00 a.m. the next morning.

The jury found defendant to be guilty of all charges. The trial court entered judgment sentencing defendant to a minimum of 336 months to 413 months for the crimes of first-degree sex offense with a child, second-degree rape, first-degree rape of a child, and three counts of taking indecent liberties with a child. Defendant appeals.

## II. Issues

The issues on appeal are whether the trial court erred by: (1) denying defendant's motions to dismiss; (2) allowing into evidence statements made by defendant while he was at Stanly County Hospital; (3) allowing the State to introduce and cross-examine defendant regarding intercepted letters he wrote to his wife while in jail; (4) allowing the State to offer evidence of defendant's "spontaneous" statement to detention officers while in custody and represented by counsel; (5) allowing Nurse Smith to be qualified as an expert and permitting her testimony of whether her examination was consistent with someone who had been sexually assaulted; (6) allowing Dr. Alexander to testify to whether her findings were consistent with someone who had been sexually assaulted; (7) allowing the child to testify that nothing "like this had ever happened to [her] before;" and (8) denying defendant's request for jury instructions on the lesser-included offense of attempt.

## III. Motions to Dismiss

Defendant contends the trial court erred in denying his motions to dismiss made at the close of the State's evidence and again at the close of all evidence. Defendant offered evidence following presentation of the State's case, which precludes our review of the motion to

dismiss made at the close of the State's evidence. N.C.R. App. P. 3(b)(3) (2004). Our review is limited to a consideration of whether the trial court properly denied defendant's motion to dismiss made at the close of all evidence.

A motion to dismiss for insufficiency of the evidence is properly denied if substantial evidence exists to show: (1) each essential element of the offense charged; and (2) that defendant is the perpetrator of such offense. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "The trial court's function is to test whether a reasonable inference of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.* at 99, 261 S.E.2d at 117 (citations omitted). The evidence is to be considered in the light most favorable to the State. *Id.*

> If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury. When the State's evidence is conflicting—some tending to incriminate and some to exculpate the defendant—it is sufficient to repel a motion for judgment of nonsuit, and must be submitted to the jury.

*State v. Horner*, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958) (citations omitted).

### A. Second-Degree Rape

[1] "Second[-]degree rape is vaginal intercourse by force and against the will of the victim." *State v. Morrison*, 85 N.C. App. 511, 515, 355 S.E.2d 182, 185 (citing N.C. Gen. Stat. § 14-27.3(a)(1); *State v. Barnette*, 304 N.C. 447, 284 S.E.2d 298 (1981)), *appeal dismissed and disc. rev. denied*, 320 N.C. 796, 361 S.E.2d 84 (1987). "The force required to constitute rape must be actual or constructive force used to achieve the sexual intercourse. Either is sufficient." *Morrison*, 85 N.C. App. at 515-16, 355 S.E.2d at 185 (citing *State v. Alston*, 310 N.C. 399, 312 S.E.2d 470 (1984)). "The use of force may be established by evidence that submission was induced by fear, duress or coercion." *State v. Midyette*, 87 N.C. App. 199, 201, 360 S.E.2d 507, 508 (1987) (citing *State v. Yancey*, 291 N.C. 656, 231 S.E.2d 637 (1977)), *aff'd*, 322 N.C. 108, 366 S.E.2d 440 (1988).

The child testified that defendant had "put his private inside of [her] private" between "four to eight" times. The child testified she was "scared" and "tried to push him off." This testimony is sufficient evidence for the jury to decide whether defendant forcibly engaged in

vaginal intercourse with the child against her will. This assignment of error is overruled.

### B.  First-Degree Statutory Rape

**[2]** To convict defendant of first-degree statutory rape, "the State had to prove that he engaged in vaginal intercourse with a victim under the age of thirteen years, when he was at least twelve years old and at least four years older than the victim." *State v. Degree,* 322 N.C. 302, 308, 367 S.E.2d 679, 683 (1988) (citing N.C. Gen. Stat. § 14-27.2(a)(1)).

Here, evidence was presented to show defendant was more than four years older than the eleven-year-old child. The child testified defendant "put his private inside of [her] private" between "four to eight" times. Nurse Smith also testified that during her examination of the child, the child informed Nurse Smith that defendant had penetrated her vagina with his penis "for four to eight times." This is sufficient evidence for the jury to determine whether defendant "engaged in vaginal intercourse." *Degree,* 322 N.C. at 308, 367 S.E.2d at 683. The trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence. This assignment of error is overruled.

**[3]** Defendant argues he cannot be prosecuted for both first-degree statutory rape and second-degree forcible rape. Defendant's double jeopardy issue and constitutional question was not raised at the trial court during his motion to dismiss. Further, defendant moved to dismiss "based on insufficiency of the evidence" and did not raise the issue during the jury charge conference, move to set aside the verdict or for a new trial, or request the court to arrest judgment on either charge because of double jeopardy issues.

Our appellate courts have long recognized that "we will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below." *State v. Jones,* 242 N.C. 563, 89 S.E.2d 129, 130 (1955). Since this argument was not raised before the trial court, this assignment of error is dismissed. *See Anderson v. Assimos,* 356 N.C. 415, 572 S.E.2d 101 (2002).

### C.  First-Degree Sexual Offense with a Child

**[4]** To sustain a motion to dismiss an indictment for first-degree sexual offense with a child, the evidence must show:

(1) the defendant engaged in a "sexual act," (2) the victim was at the time of the act [thirteen] years old or less, and (3) the defendant was at that time four or more years older than the victim. G.S. 14-27.4. A "sexual act" is defined as "cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by any object into the genital or anal opening of another's body . . . [except for] accepted medical purposes."

*State v. Ludlum*, 303 N.C. 666, 667, 281 S.E.2d 159, 160 (1981) (quoting N.C. Gen. Stat. § 14-27.1(4)). Here, the child testified "[defendant] made me suck his private" with her mouth. Although defendant denied this accusation, the child's testimony presents more than a "scintilla of competent evidence" to allow the jury, as fact finder, to determine whether defendant was guilty of engaging in the sexual act of fellatio with the child. *Horner*, 248 N.C. at 344-45, 103 S.E.2d at 696. This assignment of error is overruled.

### D. Indecent Liberties with a Child

[5] In order to obtain a conviction for taking indecent liberties with a minor, the State must prove:

(1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Rhodes*, 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987) (citing *State v. Hicks*, 79 N.C. App. 599, 339 S.E.2d 806 (1986)); *see also* N.C. Gen. Stat. § 14-202.1 (2003). "The fifth element, that the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions." *Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580. "The uncorroborated testimony of the victim is sufficient to convict under N.C.G.S. § 14-202.1 if the testimony establishes all of the elements of the offense." *State v. Quarg*, 334 N.C. 92, 100, 431 S.E.2d 1, 5 (1993) (citing *State v. Vehaun*, 34 N.C. App. 700, 705, 239 S.E.2d 705, 709 (1977), *cert. denied*, 294 N.C. 445, 241 S.E.2d 846 (1978)).

Defendant was charged with three counts of taking indecent liberties with a minor. The evidence establishes the victim was an eleven-year-old child at the time of the incident and defendant was forty years old at the time of trial. The child testified that defendant:

(1) lifted her shirt and kissed her breasts; (2) kissed her "private" area with his lips; and (3) penetrated her vagina with his fingers. Following these acts, defendant obtained a washcloth from the bathroom and "wiped something off the bed." These actions are sufficient for the jury to infer that defendant's actions were "for the purpose of arousing or gratifying sexual desire." *Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580.

Sufficient evidence was presented to support the elements of three charges of taking indecent liberties with a minor. The trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

## IV. Statements at the Hospital

[6] Defendant contends the trial court erred in admitting into evidence statements he made to Deputy Inman. We disagree.

In *State v. Thomas*, this Court considered the question of whether "the interrogation in the emergency room was a custodial interrogation and that the defendant should have been apprised of his fifth and sixth amendment rights as vouchsafed by *Miranda v. Arizona*, 384 U.S. 436 (1966)." 22 N.C. App. 206, 208, 206 S.E.2d 390, 392, *appeal dismissed*, 285 N.C. 763, 209 S.E.2d 287 (1974). In *Thomas*, the trial court found defendant was "free to go at his pleasure;" the officers had "no intentions of arresting the defendant for any crime;" and the defendant "was coherent in thought and speech . . . [and] not noticeably sedated or under the influence of any alcohol or narcotic drugs . . . ." *Id.* at 210, 206 S.E.2d at 392. We held no "custodial interrogation" occurred because "the atmosphere and physical surroundings during the questioning manifest a lack of restraint or compulsion." *Id.* at 211, 206 S.E.2d at 393.

Deputy Inman failed to provide defendant with his *Miranda* rights prior to speaking with him at the hospital. However, on *voir dire*, Deputy Inman testified that he informed defendant he was not under arrest, was free to leave, and did not have to speak with him. Defendant was not arrested until several days later. The trial court found defendant was not in custody or under arrest at the hospital to require a *Miranda* warning.

Defendant's brief concedes, "Obviously, it cannot be contended that Defendant was in 'custody' at the hospital." Defendant cites no authority to support his assertion that his statements made at the hospital were erroneously admitted other than our United States

Supreme Court's recent holding in *Fellers v. United States*, 540 U.S. 519, 157 L. Ed. 2d 1016 (2004). In *Fellers*, law enforcement officers went to the defendant's home to discuss his involvement in methamphetamine distribution. 540 U.S. at 521, 157 L. Ed. 2d at 1021. At the time of the discussions, the officers possessed a warrant and a grand jury had indicted the defendant. *Id.*

Here, Deputy Inman had identified defendant as a suspect. However, defendant had not been indicted by a grand jury, and no warrant for arrest had been issued. *Fellers* is not controlling precedent for this portion of defendant's argument. Defendant was told he was not under arrest, was free to leave, and did not have to speak with the officers. Defendant also concedes the conversation was not a custodial interrogation. Defendant's argument is without merit. This assignment of error is overruled.

## V. Letters from Jail

**[7]** Defendant argues the trial court erred in admitting into evidence derogatory statements about the child contained in letters he wrote to his wife while in jail, which were seized by law enforcement officers. We disagree.

In *State v. Wiley*, our Supreme Court reviewed the issue of the constitutional "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." 355 N.C. 592, 602, 565 S.E.2d 22, 32 (2002) (citing U.S. Const. amend. IV; *see also* N.C. Const. art. I, §§ 18, 19, 23), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). Specifically in *Wiley*, the Court considered "whether defendant [a prisoner] had an expectation of privacy in a letter, handed to jail personnel, contained in an unsealed envelope not marked with the words 'legal' and not addressed to an attorney." 355 N.C. at 603, 565 S.E.2d at 32. The Court held, "defendant did not hold a subjective expectation of privacy in the unsealed envelope he delivered to [the deputy], and even if he did, this expectation was not objectively reasonable." *Id.*

We find *Wiley* to be controlling and dispositive on this issue. The letters seized by jail personnel were not marked "legal," were given to jail personnel to be mailed with the outgoing mail, and were not addressed to an attorney.

**[8]** Defendant also argues the letters should not have been admitted because they contained marital communications. In *State v. Wallace*, our Supreme Court held the marital privilege "is personal to the par-

ties; a third person who happened to overhear a confidential conversation between husband and wife may be examined as to such conversation. A letter, also, written confidentially by husband to wife is admissible against the husband, when brought into court by a third party." 162 N.C. 623, 630, 78 S.E. 1, 12 (1913) (quoting Whar. Cr. Ev., sec. 398). The trial court did not err by admitting into evidence defendant's letters addressed to, but not delivered to his wife, written while he was incarcerated in the Stanly County Jail. This assignment of error is overruled.

## VI. Spontaneous Statements to Law Enforcement Officers

**[9]** Defendant contends the trial court erred in admitting his statements to Deputy Clack after defendant visited with the jail nurse. We disagree.

Defendant argues that his statements were not knowingly or understandably made. Defendant failed to present any authority in support of this assignment of error and has waived appellate review. N.C.R. App. P. 10 (2004). Further, his brief fails to specifically identify those portions of testimony that were erroneously admitted.

Were we to find the trial court erred in allowing Deputy Clack to testify regarding defendant's statements, defendant's own testimony corroborated his statements to Deputy Clack. Additionally, defendant has not assigned error to the admission of his signed statement taken by Detective Coley, which were recorded after he received *Miranda* warnings and waived his right to counsel. This statement also corroborates the statements defendant made to Deputy Clack. This assignment of error is overruled.

## VII. Expert Testimony

Defendant contends the trial court erred in allowing Nurse Smith, the examining nurse, to be qualified as an expert witness and also erred by allowing her testimony that her examination of the child presented conditions consistent with vaginal penetration. Defendant also argues the trial court erred in allowing Dr. Alexander to testify regarding whether the child's demeanor and injuries were consistent with someone who had been sexually assaulted.

## A. Qualification

**[10]** Defendant argues Nurse Smith was not qualified to testify as an expert. In *Howerton v. Arai Helmet, Ltd.*, our Supreme Court reiter-

ated North Carolina's "three-step inquiry for evaluating the admissibility of expert testimony," set forth in *State v. Goode*, 341 N.C. 513, 527-29, 461 S.E.2d 631, 639-41 (1995): "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (internal citations omitted).

> It is well-established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. N.C.G.S. § 8C-1, Rule 104(a) (2003). When making such determinations, trial courts are not bound by the rules of evidence. *Id.* In this capacity, trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion.

*Id.* (citations omitted).

Defendant does not challenge the first and third steps of *Goode*, but argues Nurse Smith was not qualified to testify as an expert. "The essential question in determining the admissibility of opinion evidence is whether the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies." *State v. Phifer*, 290 N.C. 203, 213, 225 S.E.2d 786, 793 (1976) (citations omitted), *cert. denied*, 429 U.S. 1050, 50 L. Ed. 2d 766 (1967).

Nurse Smith testified she had been employed at Stanly Memorial Hospital for nineteen years and had served as nurse manager in the emergency department for the two years prior to her testimony. She had a Bachelor of Science in nursing from the University of North Carolina at Pembroke and had additionally received special "sexual assault nurse examiner training" ("SANE") in 1999. As part of the SANE program, she spent forty hours in the classroom and completed fifty-six hours of clinical practice with law enforcement, rape crisis centers, and with victim assistance personnel. Nurse Smith testified she was specifically trained to examine "the victim's demeanor, how they're responding, their body language, their gestures and the things they say. And . . . also trained to look for physical evidence and signs

of trauma." At the time of trial, Nurse Smith had been a certified sexual assault nurse examiner for three years and had conducted several pelvic exams with sexual assault evidence collection kits. Nurse Smith was tendered and allowed to testify as an expert in "that specialized area as a sexual assault nurse examiner."

The trial court did not abuse its discretion in allowing Nurse Smith to testify as an expert in the area of a sexual assault nurse examiner. This assignment of error is overruled.

### B. "Consistent With" Testimony

[11] Defendant asserts the trial court erred in allowing Nurse Smith to testify that the "excoriations" on the child's "labia majora" and that the redness of her breast were "consistent with vaginal penetration" and consistent with the child's statements that defendant had kissed her on her breast. Defendant also contends the trial court erred in allowing Dr. Alexander to testify that the child's injuries "were consistent with . . . penetration injury."

"It is undisputed that expert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified." *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984) (citing *Cogdill v. Highway Commission*, 279 N.C. 313, 182 S.E.2d 373 (1971)). Our Supreme Court clearly recognizes that "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002). "The fact that this evidence may support the credibility of the victim does not alone render it inadmissible. Most testimony, expert or otherwise, tends to support the credibility of some witness." *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987). "Furthermore, expert opinion on an ultimate issue is admissible." *Id.* at 31, 357 S.E.2d at 366 (citing N.C.R. Evid. 704).

Defendant does not assign error to the trial court's qualification of Dr. Alexander as an expert. We previously held the trial court did not abuse its discretion in qualifying Nurse Smith as an expert. Based on their qualifications, Nurse Smith and Dr. Alexander were permitted to testify regarding whether their examinations and findings were consistent with a child who had suffered vaginal penetration and kissing on the breast. This assignment of error is overruled.

VIII. Jury Instructions

**[12]** Defendant argues the trial court erred by failing to instruct the jury on the lesser-included offense of attempted first-degree sexual offense. We disagree.

"[A] defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it," *State v. Johnson*, 317 N.C. 193, 205, 344 S.E.2d 775, 782 (1986), and where " 'the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). If the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense, and no evidence negates these elements other than the defendant's denial that he committed the offense, the defendant is not entitled to an instruction on a lesser offense. *Leazer*, 353 N.C. at 237, 539 S.E.2d at 925.

Here, defendant testified that while sleeping on the sofa, he awoke because someone was fondling his penis. He moved toward the person, but suffered a spasm in his spine that prevented him from completing any sexual contact. Defendant requested jury instructions on attempted first-degree rape, attempted first-degree sexual offense, and attempted second-degree rape. The trial court denied defendant's request for instructions on attempted first-degree sexual assault. The transcript and verdict sheets show the trial court instructed on and the jury considered the charges of attempted second-degree rape and attempted first-degree statutory rape.

The elements for first-degree sexual assault require the State to establish the defendant engaged in a "sexual act," such as "cunnilingus, fellatio, analingus, or anal intercourse . . . [or] the penetration, however slight, by any object into the genital or anal opening of another's body . . . [except for] accepted medical purposes." N.C. Gen. Stat. § 14-27.1(4). Although defendant testified he attempted vaginal intercourse with the person "fondling" him on the couch, which sustains an instruction on attempted second-degree rape and attempted first-degree statutory rape, no evidence was presented that defendant "attempted" to engage in a "sexual act." Defendant's testimony only asserts the events described above, and he denies any of the other acts of which he was convicted. Defendant fails to identify any testimony or evidence to support an instruction on attempted first-degree sexual offense. This assignment of error is overruled.

## IX.  Conclusion

The trial court did not err in denying defendant's motion to dismiss. Substantial evidence of each element was presented for all offenses charged. The trial court did not err in admitting defendant's statements to Deputy Inman made while not in "custody" at the hospital, before defendant had been indicted or an arrest warrant had been issued, and after defendant was told he was not under arrest and free to leave. Defendant failed to present any authority to support his argument that the trial court improperly admitted his statements to Deputy Clack and has waived appellate review of this assignment of error. The trial court did not err in admitting the letters defendant wrote to his wife from jail that were seized by jail personnel.

The trial court did not abuse its discretion in allowing Nurse Smith to be qualified as a sexual assault nurse examiner expert or in allowing her and Dr. Alexander to testify that their examinations were consistent with a child who had engaged in sexual activities. The trial court did not err by denying defendant's requested jury instruction on attempted first-degree sexual offense. We conclude defendant received a fair trial free from errors he preserved, assigned, and argued.

No Error.

Judges HUDSON and BRYANT concur.