STATE OF NORTH CAROLINA v. ANTHONY TYRONNE LEAK

No. 8819SC30

(Filed 31 May 1988).

1. Criminal Law § 75.8— Miranda warnings—repetition not required

There was no merit to defendant's contention that an officer should have repeated the *Miranda* warning to defendant before proceeding with the interrogation where the evidence showed that, when defendant initially advised officers that he did not wish to answer questions without an attorney being present, the interrogation ceased, and it was only as the charges were being explained to defendant that he volunteered that he wanted to tell his side of the story; the length of time between the giving of the first warning and the interrogation was at most a matter of minutes; the *Miranda* warning and the interrogation took place in the same office with the same person as the interrogating officer the entire time; though defendant had an I.Q. of 71, he was coherent, was not under the influence of alcohol or drugs, and understood what was transpiring; there was no evidence that defendant was so mentally deficient that he had forgotten or was unaware of his *Miranda* rights; and the subject remained the same, and nothing occurred between the interrogation and defendant's statement which would dilute the initial warning in any respect.

2. Criminal Law § 75.4— custodial interrogation—invocation of right to counsel—subsequent confession

Defendant's confession made after he had previously invoked his right to counsel during interrogation was not inadmissible under *Edwards v. Arizona,* 451 U.S. 477, where interrogation ceased when defendant indicated he wanted counsel, the officer was explaining the charges to defendant when defendant stated that he wanted to tell his side of the story, and defendant thus initiated the conversation which led to his incriminating statements.

3. Criminal Law § 75.2— 4½-hour delay in taking defendant before judicial officer—no coercive factor rendering confession involuntary

There was no merit to defendant's contention that a 4½-hour delay in taking him before a judicial officer after service of the warrant was a coercive fac-

tor which rendered his confession involuntary, since defendant did not show any causal connection between the confession and the delay.

APPEAL by defendant from *Boner (Richard D.), Judge.* Order entered 17 August 1987 and judgments entered 20 August 1987 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 10 May 1988.

Defendant was charged in separate bills of indictment with the offenses of felonious larceny, first-degree rape, first-degree burglary, first-degree kidnapping and first-degree sexual offense. From verdicts of guilty to each of the offenses and judgments entered thereon, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Michael Rivers Morgan, for the State.*

*Clark R. Bell for defendant-appellant.*

SMITH, Judge.

Prior to trial, defendant made a motion to suppress any statement made by him to law enforcement officers during a custodial interrogation. Defendant's sole assignment of error is that the trial court erred in denying his motion. We disagree.

The State's evidence offered at the suppression hearing tends to show that the crimes for which defendant stands convicted were committed on 15 March 1987. In the late afternoon of 18 March 1987 following an extensive manhunt, several law enforcement officers of the Randolph County Sheriff's Department (RCSD) and the State Bureau of Investigation, some dressed in camouflaged clothing, went to Allred's Trailer Park to arrest defendant for the offenses charged in the bills of indictment. The officers first saw defendant hiding under a trailer. Subsequently, Detective Barry Bunting (Bunting) observed defendant on the floorboard of an automobile parked at the trailer park. Bunting drew his service revolver and twice ordered defendant to exit the vehicle. When defendant refused to comply, Bunting grabbed defendant by his hair, pulled him from the vehicle and pushed him to the ground. Defendant began to squirm, and Bunting told defendant to cease or he would "blow [defendant's] brains out." At the time defendant was taken into custody, all officers present

had their weapons drawn. Defendant was subsequently placed in a police car and while seated therein Deputy Sheriff Tony Hasty told defendant that he "ought to blow [defendant's] head off."

Defendant was then transported to the RCSD offices where he was subsequently turned over to Litchard Hurley, the officer in charge of the investigation. Hurley took defendant to his office, a room approximately 12 feet 8 inches by 10 feet (12' 8" x 10') which had two small desks, several chairs and some filing cabinets located therein. Also present in the office were RCSD Officers Earl Small and James Allred. All the officers present had their weapons with them. At approximately 6:30 p.m., Allred began to read defendant his *Miranda* rights while Hurley was filling out the back of the warrants of arrest which had been previously issued. As each component of the *Miranda* warning was read to defendant, he was asked if he understood. If defendant acknowledged that he did understand, a check-mark was placed on the rights form beside the particular right. When asked if he was "willing to talk . . . without having a lawyer present," defendant said "no." Hurley then started to give defendant copies of each warrant and began telling defendant the offenses with which he was charged. While this exchange was proceeding, defendant said he would like to tell his side of the story. Defendant then gave an inculpatory statement. Hurley reduced the statement to writing and gave it to defendant who read it and signed it on the last page.

The State's evidence further tends to show that while in Hurley's office, no one ever threatened defendant or promised him anything. The officers did not smell any alcohol on defendant and he did not appear to be disoriented. He spoke coherently and appeared to understand what was transpiring. At some point while in Hurley's office, though the record is unclear as to when, defendant was told that a co-defendant had been arrested and had made a confession which implicated defendant. Everyone in the room was sitting down and at least one of the officers left the room to get defendant a cup of coffee. Defendant was also allowed to use the bathroom. At the time of the interrogation, the door to the office was closed. The officers remained in the room with defendant for at least two hours. The court found unbelievable defendant's evidence that he was under the influence of drugs and alcohol, that he made no statement and that he did not waive his

rights. Approximately four hours after defendant's arrest, he was taken before a magistrate. In the trial court's order denying defendant's motion to suppress, the trial judge made extensive findings of fact and conclusions of law which generally encompass the facts as herein related.

Initially, we point out that the findings of fact made by the trial court at the *voir dire* hearing on the voluntariness of a confession are binding on this court if supported by any competent evidence in the record. *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L.Ed. 2d 155, 102 S.Ct. 1741 (1982). All of the trial judge's extensive findings are supported by such evidence. We therefore address the trial court's conclusions on which it based its order admitting defendant's statement into evidence.

[1] The test to determine the admissibility of defendant's confession under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), is whether the confession is voluntary under the totality of the evidence in this case. *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983). In deciding this issue, we first address defendant's contention that Officer Hurley should have repeated the *Miranda* warning to defendant before proceeding with the interrogation. The evidence shows, however, that when defendant initially advised the officers that he did not wish to answer questions without an attorney being present, the interrogation ceased. It was only as the charges were being explained to defendant that he volunteered that he wanted to tell his side of the story.

In addition to the totality of the circumstances, some of the factors which must be considered in determining whether initial warnings have become so stale and remote that there is a possibility that a defendant is not aware of his constitutional rights at the time of a subsequent interrogation are: (1) the length of time between the warning and the interrogation; (2) whether the warnings were given and the subsequent interrogation occurred in the same place; (3) whether the warnings and interrogation were conducted by the same officer; (4) the extent to which a subsequent statement differs from a previous statement, if any; and (5) the apparent intellectual and emotional state of a suspect. *State v. Artis*, 304 N.C. 378, 283 S.E. 2d 522 (1981); *State v. McZorn*, 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence vacated*, 428 U.S.

904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976). Here, the length of time between the giving of the first warning and the interrogation was, at most, a matter of minutes. The *Miranda* warning and the interrogation all took place in the same office, and Officer Hurley was the interrogating officer the entire time. Though the record indicates that defendant has an I.Q. of 71, it appears from the record and the trial court found that defendant was coherent, was not under the influence of any alcohol or drugs and understood what was transpiring. Though defendant's mental condition is a factor to be considered, that factor standing alone will not render an otherwise voluntary confession inadmissible. *State v. Stokes*, 308 N.C. 634, 304 S.E. 2d 184 (1983); *State v. White*, 291 N.C. 118, 229 S.E. 2d 152 (1976). It is apparent that the trial court did consider defendant's mental capacity in reaching its conclusion that defendant's confession was voluntary because it also found that defendant's intelligence level was not so low as to render the waiver of his rights involuntary or otherwise invalid. There was no evidence that defendant was so mentally deficient that he had forgotten or was unaware of his *Miranda* rights or that an inordinate amount of time passed between the officer advising defendant of his rights and the interrogation. *State v. Artis, supra.* The subject remained the same and the record discloses that nothing occurred between the interrogations which would dilute the initial warning in any respect. *State v. McZorn, supra.* We thus hold that it was unnecessary for the officers to repeat the *Miranda* warnings.

[2] Defendant further contends that this case is controlled by *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed. 2d 378, 101 S.Ct. 1880, *reh'g denied*, 452 U.S. 973, 69 L.Ed. 2d 984, 101 S.Ct. 3128 (1981). Defendant's reliance on *Edwards* is misplaced. *Edwards* merely holds that once a defendant has invoked his right to counsel at a custodial interrogation, he may not thereafter be subjected to further questioning until counsel is provided unless the accused initiates the communication, exchange or conversation with police. *Id.*

In the case at bar, defendant initiated the further communication. The only statements by the officer concerned the nature of the charges against defendant. These statements cannot be said to be an interrogation for " 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (*other than those normally attendant to*

*arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed. 2d 297, 308, 100 S.Ct. 1682, 1689-90 (1980) (emphasis added). G.S. 15A-401(a)(2) requires that arrest warrants be served on a defendant. *State v. Underwood*, 84 N.C. App. 408, 352 S.E. 2d 898 (1987). Officer Hurley was attempting to complete service of the warrants when defendant indicated he wished to talk.

[3] Lastly, defendant contends that the four and one-half hour delay in taking defendant before a judicial official after service of the warrants was a coercive factor which renders defendant's confession involuntary. Defendant, however, has not shown any causal connection between the confession and the delay as required by *State v. Hunter*, 305 N.C. 106, 286 S.E. 2d 535 (1982). No constitutional provision requires exclusion of the statement on this ground. *State v. Richardson*, 295 N.C. 309, 245 S.E. 2d 754 (1978).

The only factors concerning defendant's arrest and interrogation which could have arguably been coercive were the statements made at the scene of defendant's arrest by officers Hasty and Bunting. Though we highly disapprove of those statements, we hold that defendant's statement was voluntary considering the totality of the evidence.

The record in this case is otherwise devoid of any evidence that defendant's inculpatory statement was a response to any overbearing police procedures or questioning which were designed to elicit the statement. *State v. Thomas*, 284 N.C. 212, 200 S.E. 2d 3 (1973); *State v. Blackmon*, 284 N.C. 1, 199 S.E. 2d 431 (1973). The trial court's conclusions that defendant's statement was made "freely, voluntarily and understandingly" with knowledge and understanding of "his right to counsel" coupled with the conclusion that defendant "knowingly, intelligently, and voluntarily waived . . . [these] rights" are fully supported by the findings of fact. We find

No error.

Judges JOHNSON and PHILLIPS concur.